On the Merits.
[3] It appears that there are dwelling houses standing where the bayou formerly ran. . The sidewalk is on the south bank or elevation in front of the Lund place. This property measures 6 arpents by 14 toises *417 front on Gentilly Boad by a depth of 20 arpents. There is a diversion in the side line, and in consequence the property measures 7 arpents and 15 toises in the rear. This property is about a mile below Gentilly Terrace. The bayou runs toward the lake, or the east. It was stated by witnesses that voluntarily the owners of the land in the locality have made the roadway in front of Gentilly Terrace 106 feet. There were other changes made, we are told. There are two ridges, or rather elevations, on Gentilly extending on to the Lund place and a depression between the two on either side of the ridge. Away from these depressions, the lands are practically level. There is no navigable stream at this point, and there never was, judging from the height of the bottom and the manner the stream has had its origin. Besides, there’ were trees and stumps in the former bayou which were very old and which completely obstructed navigation. Many of them are still in this bayou. Every one know's that cypress trees are of slow growth. Some of the trees in this bayou have the appearance of being over 100 years old. A map of survey (not sustained by proof) was introduced in evidence to show that the stream was at one time navigable. It is a survey made in 1870 of private claims and public sections. Well-known United States deputy surveyors agreed in stating that this survey is erroneous; it shows an attempt at meandering the stream. They stated that only navigable streams are meandered under instructions of the government, and that the government never instructed any one to run this meander line. They testified that they are familiar with the instructions issued by the government. They knew the locality and testified positively that the depression in question never formed a navigable stream. One of these surveyors testified that the level of the bottom was too high, even for drainage.
Another United States deputy surveyor, who is an old man, testified that the bayou was never a navigable stream at the point where defendants urged it was navigable. He said that there was a mere depression, called it a swale, between two ridges. He corroborated the testimony of others that in the bed of this stream there are cypress trees, underbrush, prairie grass. He said substantially as a witness that, while the surveyor, Sulakowski, was surveying in the early 1870’s and was attempting to meander this low place, he knew of his work. He stated that he was familiar with the Bayou Sauvage, the name of the swale; it had not been navigable, to his personal knowledge, these past 50 years, and from the appearance of the land it had not been navigable for at least a century.
The secretary of the Gentilly Terrace Committee, in charge of the public works of that place, said substantially that it was not navigable and that he had never heard that it had ever been navigable. He resided at the place.
The title to this land has a history beginning from the time of the colonies. The first title bears date from 1778 and another from 1775. Neither makes mention of a stream, of any consequence at any rate. The descriptions of the deeds in the act subsequent do not make mention of the lost bayou. The following is a description in the act of April, 1777, in which it appears that Madam Pelagie Lorainne, widow of Baptiste Brazilier, cor veyed as follows:
“The land which I own, forming part ot Bayou Gentilly, without any reservation, except the same bayou with all its denominations. The said land is located and bounded on one side by the land of Gabriel Peysoux, and on the other side by the said Antoine Gilberto Maxent, being in the situation or place in which it may be, either in front or in the rear, to start as soon as (from) the bayou, which I reserve for myself. (Italics ours.) I have acquired said land by inheritance from my said husband.”
*419 It is not possible that this widow was the owner of a navigable bayou, as one would have to infer if the description above included a navigable stream. It evidently did not. The tract in the different deeds is nearly always referred to as fronting on Gentilly Road, not on any bayou. Whatever may have been done by the Land Department of the United States cannot deprive owners of the right acquired during colonial days or prior to any attempt (if any was made) to have the property declared as part of a public domain. These early grants are protected by the first treaty of Paris, that which ceded the territory of Louisiana to the United States.
As to the maps: If any have a tendency to prove that there was a navigable stream on this land as claimed by the defendants, it must have been over a half a century ago. The testimony is overwhelmingly for plaintiffs on this point. We have read the legends of the different maps, and, after having given them serious consideration, it does not appear by them that there was a navigable stream (only with the exception of the survey to which we have before referred).
We pass from the question presented by defendant with the statement that the land is not a locus publicus.
[4] In regard to mortgage upon the property: We find the following in the record as testified to by Mr. Brian, attorney: That the mortgages are to be paid and canceled out of the cash portion of the purchase price. We take it that this is not particularly objected to. There is a tone about his evidence which leads us to infer .that it is pretty well understood that this question of itself is of no ■ moment.
We regret because we are not as positive as we should be on this point that index ref'erences to certificate, page 198 of the record, is error; there is no certificate of mortgage copied on that page. We assume that it was the certificate intended.
Be all this as it may, of course the mortgage must be timely paid.
For reasons stated, it is ordered, adjudged, and decreed that our judgment heretofore rendered in this case is avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that the judgment of the district court declaring that the court has jurisdiction is affirmed. It is further ordered, adjudged, and decreed that we take notice of the demand for specific performance only as having put defendants in default, and that if the latter do not sign the deed tendered to them to be signed within ten days that the property then be resold. The amount just above alluded to which must be paid is $47,750. Of that amount not less than $23,-330.33 cash, balance at the option of the purchasers, in cash for equal amounts of one, two, three, and four years, with interest payable annually at 8 per cent.; purchasers to assume all taxes for 1911.
To copy literally and reiterating the terms of the sale as they are repeated in the advertisement :
Cash for not less than two-thirds of the appraisement of the profoerty, being $23,-330.33; the purchaser to assume all taxes for 1911, and for the balance, if any, or excess of the bid to be paid in cash at the option of the purchaser or divided in four equal installments, due one, two, three, and four years from the date of sale, drawing interest at the rate of 8 per cent, per annum payable at the order of the purchasers and by him and them indorsed, said notes to contain the usual 10 per cent, attorneys’ fees,-special mortgage and vendor’s privilege retained; notes and bonds to be executed; 10 per cent, deposited heretofore to be' credited on the price.
It is further ordered, adjudged, and decreed that the judgment appealed, from is annulled, avoided, and reversed; the appel *421 lants pay the cost of appeal and of the district court.
In reproducing the terms in our decree we have been obliged to reiterate as in the original in order to convey the meaning.
As to the rate of interest, of which defendants and appellees complain, we make no change from 8 to 5 per cent., as we are not of the opinion that under the terms of the sale such a change would be justifiable.
PROVO STY, J., being absent on account of illness, takes no part.